RENDERED: OCTOBER 18, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0560-MR

LISA BENTLEY AND GERALD
BENTLEY                                                          APPELLANTS


                    APPEAL FROM BULLITT CIRCUIT COURT
v.              HONORABLE ELISE GIVHAN SPAINHOUR, JUDGE
                        ACTION NO. 18-CI-00296


SCARLETT ETHERTON AND
TASHA BENTLEY                                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND GOODWINE, JUDGES.

ACREE, JUDGE: Appellants Lisa and Gerald Bentley (Grandparents) appeal the

Bullitt Family Court's denial of their motion to modify custody or visitation time

of their minor grandson. We affirm.

## BACKGROUND

On December 10, 2017, Tasha Bentley (Mother) shot and killed Gary Wayne Bentley (Father), and eventually pleaded guilty to murder. At the core of this case is their sole minor child (Child). Before Mother was taken into custody, she executed a medical power of attorney authorizing medical decisions for Child to be made by Scarlett Etherton, Child's maternal great-aunt (Great-Aunt).[1] Mother then relinquished Child's physical custody to Great-Aunt.

Great-Aunt took Child from his home county, Henry County, to Bullitt County where she was employed as a clerk in the Bullitt County courthouse. On December 12, 2017, two days after the murder, Great-Aunt filed a dependency, neglect, or abuse (DNA) petition in Bullitt County (No. 17-J-00586-001). The case proceeded in accordance with KRS[2] 620.070. The Bullitt Family Court awarded temporary custody of Child to Great-Aunt on December 13, 2017.

On December 18, 2017, Grandparents initiated a grandparents' visitation action in Henry County (No. 17-CI-00249), unaware of the Bullitt County DNA action, naming both Mother and Great-Aunt as respondents. Great-

---

[1] Scarlett Etherton is identified by Mother, not as her aunt, but as her biological mother. In the order granting permanent custody to Etherton in the dependency, neglect, or abuse (DNA) action, No. 17-J-00586-001 (Bullitt Family Court, Jul. 30, 2018), Etherton is identified as Child's maternal grandmother. For purposes of this appeal, the relevance of this legal and biological relationship is inconsequential.

[2] Kentucky Revised Statutes.

Aunt responded by seeking dismissal based on the DNA action. Grandparents then attempted to intervene in the Bullitt County action.

On January 17, 2018, the Bullitt Family Court began an adjudication hearing on Great-Aunt's DNA petition. By counsel, Mother stipulated dependency and waived the requirement of a separate disposition hearing.

Before the family court ruled, Grandparents' counsel made known to the court that her clients were present in the courtroom and, during the hearing itself, sought to intervene and, without formal motion, expressed a desire for custody of Child. They also served Great-Aunt with summons and the complaint in their Henry County visitation action.

Without ruling on Grandparents' intervention motion, the family court *sua sponte* ordered a specific visitation schedule[3] for Grandparents that was already in place by the parties' agreement. The order was entered the day of the hearing, January 17, 2018. There was no appeal from this order.

On March 14, 2018, the Henry Family Court transferred Grandparents' action seeking visitation from Henry County to Bullitt County; the case was renumbered in the latter circuit court as No. 18-CI-00296. Ultimately, this appeal is from an order regarding visitation entered in that case.

---

[3] That part of the order states: "The paternal grandparents, Gerald and Lisa Bentley, shall have visitation as agreed to by the custodian from Thursday from 4:30 PM to Sunday at 6:00 PM on alternate weekends and at other times as agreed upon by the parties."

However, progress on the transferred visitation case stalled while Grandparents again sought to intervene in the DNA case by filing such a motion, along with several others as discussed below. The Cabinet expressed doubt that Grandparents had standing to intervene, but the family court never expressly denied Grandparents' motion. Instead, the court entertained their other motions and entered orders affecting their rights.

In addition to their motion to intervene, Grandparents challenged the family court's grant of temporary custody to Great-Aunt and sought an order of joint custody. They also sought Judge Spainhour's recusal or to transfer the DNA action to Henry County. The court addressed each of Grandparents' motions in several orders of the same date.

In a lengthy April 23, 2018 order stating the events of the DNA action, Judge Spainhour denied the motion to recuse. She entered a separate order denying Grandparents' motion for joint custody. In another order, she granted grandparent visitation with similar visitation times as that entered in the January order, but additionally limiting all parties' discussion with Child regarding Mother's criminal prosecution and granting Grandparents access to Child's medical and psychological records. Finally, it ordered "further matters concerning visitation . . . be addressed in the CI action" (No. 18-CI-00296) previously transferred from Henry County. Grandparents appealed none of these orders.

On July 19, 2018, Great-Aunt moved for permanent custody in the DNA action. The motion was served on all parties of record. The record specifically shows Great-Aunt's counsel notified Grandparents' counsel of the motion by U.S. mail. The family court conducted a hearing and entered an order on July 30, 2018, noting neither Mother nor the guardian *ad litem* objected and, furthermore, although "[t]he paternal grandparents were notified . . . [they] did not appear to object." The family court granted Great-Aunt permanent custody. Again, Grandparents did not appeal this order.

At this point, the parties operated under two orders of the family court in the DNA action – the July 30, 2018 order that Great-Aunt have permanent custody and the April 23, 2018 visitation order.

In August 2018, apparently forgetting the order that further visitation matters be taken up in the Grandparents' visitation case transferred from Henry Family Court, Great-Aunt filed a motion in the DNA action to modify visitation. Grandparents found new counsel and responded. Thus prompted, the family court, on August 17, 2018, entered an order setting a hearing for September 28, 2018, to take up the issue of Grandparent visitation. (Record (R.) 32.) However, the hearing was set in the Grandparents' visitation action, not the DNA proceeding.

By the time the hearing date arrived, the parties had prepared an agreed order which the family court entered in the instant action on the date of the

hearing. Notwithstanding the nature of the order as having been agreed upon by the parties, the family court added finality language from CR[4] 54.02.

In July 2019, Grandparents moved the family court in the instant action to increase visitation. The court scheduled a hearing for October 2019. Before that date, Great-Aunt filed a motion "to modify the previous visitation order to allow visitation with the Bentleys [Grandparents] in her discretion and to order Gerald Bentley to submit to a drug screen."

For reasons not fully discernible from the record but perhaps relating to the pending criminal case against Mother, the hearing was rescheduled twice before a case management conference was scheduled for July 2021. By the parties' agreement, "the case was remanded."

In September 2021, Grandparents filed a motion "asking the Court to schedule a hearing for [Child] to permanently reside in their care." (R. 162.) Grandparents later supplemented their motion, which the family court deemed to be one for a change in custody, by filing their separate affidavits. (R. 194-210.) In response, Great-Aunt renewed her motion for an order that Grandparents' visitation shall be at Great-Aunt's discretion. (R. 169.) Partly owing to the imposition of the court's COVID-19 protocols and the desire for Mother's attendance, the hearing did not occur until December 29, 2022.

---

[4] Kentucky Rules of Civil Procedure.

-6-

After the hearing at which the parties fully presented their evidence, the family court entered an order on January 20, 2023. The family court's thoughtful and comprehensive order maintained the status quo, stating: "The Court finds that it is in the best interest of the child to leave the custody and visitation schedule as it currently exists in place." (R. 276.)

Grandparents filed a motion to alter, amend, or vacate that order, and the family court denied the motion by order entered April 10, 2023. That order provided that the record be supplemented with the sealed record of the DNA action "in the event any appellate court is asked to review this record." (R. 302.)

Although the April 10, 2023 order addresses arguments Grandparents raised in the motion to modify, the court expressly ruled that the motion failed to present "a sufficient basis under CR 59.05 . . . to merit modification of the Court's rulings found in the January 20, 2023 Order." (R. 290.) Consequently, this Court's review is of the original January 20, 2023 order. *Cabinet for Health and Fam. Servs. v. Marshall*, 606 S.W.3d 99, 103 (Ky. App. 2020) (internal quotation marks and citation omitted) ("[O]rders denying CR 59.05 motions are inherently interlocutory and, thus, there is no appeal from the *denial* of a CR 59.05 motion."). However, where necessary to respond to issues Grandparents presented only in the CR 59.05 motion and which they repeat on appeal, we will look to the family court's order denying modification as illuminating.

# ANALYSIS

Grandparents argue the family court erred in two ways. First, they say the court violated their due process rights when it adjudicated the DNA petition without notice to them, despite their attempts to be heard in that case. Second, they argue the family court's Friend of the Court (FOC) failed to comply with his statutory obligation to investigate this case. We address each in turn.

1. *The argument that Grandparents were deprived of rights in DNA case is not properly before this Court*.

Grandparents argue the family court never allowed them "to officially intervene" in the DNA action. We agree that the family court did not enter a specific order ruling on the motion to intervene. If Grandparents deemed their motion to intervene denied, their remedy was to appeal the order. "[A]n order denying intervention is appealable." *Ashland Public Library Bd. of Trustees v. Scott*, 610 S.W.2d 895, 895 (Ky. 1981) (citation omitted). They failed to do so.

But the family court in the DNA action proceeded as if intervention was granted, ruling favorably on Grandparents' motions for visitation and for access to medical, psychological, and school records, and unfavorably on others, such as their motions to recuse and for a change of venue. Opposing counsel and the clerk's office provided notices to Grandparents' counsel. If Grandparents deemed their motion to intervene granted, they could have taken an appeal from

-8-

the April 23, 2018 order in the DNA action denying their motion for joint custody. They failed to do so.

Grandparents also complain that neither they nor their counsel received notice of the hearing in the DNA action that yielded the July 30, 2018 order granting Great-Aunt permanent custody of Child. As the family court explained in its April 10, 2018 order, the record is unrefuted that timely notice was sent to Grandparents' counsel who remained their counsel of record until September 12, 2018. (R. 291.) Said the family court, "If counsel's address changes during the course of litigation, it is their obligation to inform the Clerk's Office and other parties by filing proper notice of the change." (R. 291-92 n.2.)

We believe it is worth repeating in this Opinion the words of the family court, a sage and seasoned family jurist.

> [T]he Court will note that [Grandparents] want to relitigate matters that were decided years ago in a different legal proceeding. The Court is cognizant of the "one family, one court" aim of the Kentucky Family Court system. However, procedural rules exist and take precedence over such policy aims. Proceedings must be advanced in the correct action. To the extent [Grandparents] want to raise objections [today] regarding proceedings that occurred in 2018, they are (1) untimely and (2) filed in the wrong action.

(R. 291.) Grandparents' argument before this Court repeats those untimely and misplaced objections.

Grandparents argue they were never given an opportunity to seek custody of Child. That is not so. In the instant action they initiated, the family court conducted an evidentiary hearing on December 29, 2022 to address Grandparents' "motion to modify custody (and any attendant visitation changes that modification might necessitate)[.]" (R. 269-70.) That hearing resulted in the January 20, 2023 order this Court is now reviewing. Grandparents do not present any argument challenging the procedural or substantive determinations stated in that order.

Grandparents' first argument fails.

2. *FOC satisfied the obligation with which he was charged.*

Grandparents argue the FOC failed in his duty to such a degree that reversal of the family court's order is justified. This argument is not persuasive.

In the context of such a case as this, the family court was empowered to appoint a friend of the court. "[A] friend of the court . . . is an investigator who advises the court. He or she may make recommendations and file reports, and he or she is subject to cross-examination by the parties' counsel." FCRPP[5] 6(2)(f) (Commentary).

This role should not be confused with the office or position which the legislature authorized a fiscal court to create by resolution as set forth in KRS

---

[5] Kentucky Family Court Rules of Procedure and Practice.

-10-

403.090, a statute found in the "General Provisions" section of KRS Chapter 403 (KRS 403.010 to 403.137). This fiscal-court created position has a tenure and appointment process that presupposes application to multiple actions, not just one. KRS 403.090(1). The authorizing statute requires that "[t]he appointed person shall take the constitutional oath of office and shall give bond . . . ." *Id.* Among others, "the duty of the friend of the court [is] to supervise and enforce the payment of sums ordered or adjudged by the Circuit Court in divorce actions to be paid for the care and maintenance of minor children." KRS 403.090(2). He or she "shall have authority to secure the issuance by the court of any order, rule, or citation necessary for the proper enforcement of orders and judgments in divorce actions concerning the custody, care, and maintenance of children." KRS 403.090(5).

However, in the context of facts such as presented in this case, the FOC's duties are governed by KRS 403.290 and 403.300, found in the "Custody" section of Chapter 403 (KRS 403.270 to 403.355). The FOC is included among "professional personnel" from whom "[t]he court may seek . . . advice" and whose "advice given shall be in writing and made available by the court to counsel upon request. Counsel may examine as a witness any professional personnel consulted by the court." KRS 403.290(2). The role of the court-appointed FOC in contested custody proceedings is further delineated in KRS 403.300, as follows:

(1) In contested custody proceedings, and in other custody proceedings if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by the friend of the court[6] or such other agency as the court may select.

(2) In preparing his report concerning a child, the investigator may consult any person who may have information about the child and his potential custodial arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custodian; but the child's consent must be obtained if he has reached the age of 16, unless the court finds that he lacks mental capacity to consent. If the requirements of subsection (3) are fulfilled, the investigator's report may be received in evidence at the hearing.

(3) The clerk shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing. The investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant

---

[6] In light of FCRPP 6(2)(f), this reference to "*the* friend of the court" cannot be limited logically to the fiscal-court authorized office contemplated by KRS 403.090. (Emphasis added.) Notwithstanding the obvious interplay with KRS 403.090 (which says, "the friend of the court, if requested by the trial judge, shall make such investigation"), not every fiscal court of this state has passed the resolution necessary to establish a friend of the court. On the other hand, the family court rule allows the circuit courts to appoint a friend of the court in every county even without a fiscal court resolution. Consequently, the duties set out in KRS 403.300 must also apply to a friend of the court appointed pursuant to FCRPP 6(2)(f) by a circuit court (including a family court division of the circuit court).

to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. A party may not waive his right of cross-examination prior to the hearing.

KRS 403.300.

Grandparents' objection to the FOC as stated in their second argument is that, "Other than [an] extremely limited conversation with the minor child, the Friend of the Court, Mr. Miller, failed to do anything else in anticipation of the hearing . . . [and] completely neglected his duty under Kentucky law to actually conduct an investigation." (Appellants' Br. 14.) This is not a winning argument for at least two reasons.

First, KRS 403.290-300, the statutes governing the court-appointed FOC, afford broad discretion in the FOC's conduct of the investigation as indicated by the frequent use of the permissive verb "may." Whether the family court was satisfied with the FOC's performance is, within those discretionary bounds, a matter between them.

There are, of course, FOC functions expressed in the statutes and made mandatory by use of the verb "shall" that, if not followed, could result in the family court's commission of a reversible error. *Lewis v. Lewis*, 534 S.W.2d 800, 802 (Ky. 1976) (Party "cannot be expected to exercise his right to cross-examine in the absence of knowledge of the identity of the investigators or of the contents of

-13-

the reports. . . . Clearly, the mandate of KRS 403.300(3) has not been followed."). Grandparents do not claim the FOC failed to satisfy those mandatory duties. Rather, they confuse the FOC's role in this case with the role of a fiscal-court created FOC as defined in KRS 403.090.

More importantly, this Court's function is to agree or disagree with appellants' arguments assigning error to the court from which they have brought their appeal. *Copley v. Craft*, 341 S.W.2d 70, 72 (Ky. 1960) ("appellate jurisdiction is the power and authority to review, revise, correct or affirm the decisions of an inferior court"). Grandparents' argument here assigns no error to the family court relative to the FOC's report. That report was a mere part of a body of substantial evidence supporting the family court's order. In sum, we can correct no error by a court that is not pointed out to us, and that does not exist.

## CONCLUSION

For the foregoing reasons, we conclude the family court committed no reversible error in determining it to be in Child's best interest not to modify custody or visitation. Therefore, we affirm.

ALL CONCUR.

-14-

BRIEFS FOR APPELLANTS:

Louis Joseph Paz Winner
Louisville, Kentucky

BRIEF FOR APPELLEE SCARLETT
ETHERTON:

Tammy R. Baker
Shepherdsville, Kentucky